IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

CASE NUMBER: 2:17-cv-246-FtM-99MRM

WESTERN WORLD INSURANCE
COMPANY,

    Plaintiff,

v.

GARDENMASTERS OF S.W. FLORIDA,
INC., a Florida corporation, and SEAN
MCGUINNESS, INC., d/b/a EARTHCARE
LANDSCAPE SERVICES, a Florida
corporation,

    Defendants.
_____/

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Western World Insurance Company (hereinafter "Western World"), hereby brings this Amended Complaint for Declaratory Judgment against Gardenmasters of S.W. Florida, Inc. (hereinafter "Gardenmasters") and Sean McGuinness, Inc., d/b/a Earthcare Landscape Services (hereinafter "Earthcare"), and in support thereof would state the following:

### PARTIES

1. Plaintiff, Western World, is a foreign insurer incorporated in New Hampshire with its primary place of business in Parsippany, New Jersey.

2. Defendant, Gardenmasters, is a Florida corporation with its primary place of business in Venice, Florida. Gardenmasters regularly conducts business in Collier County, Florida.

3. Defendant, Earthcare, is a Florida corporation with its principal place of business in Collier County, Florida.

## JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court because this matter relates to a declaratory judgment action pursuant to the provisions of 28 U.S.C. §2201 in which the amount in controversy is greater than $75,000. The amount in controversy is greater than $75,000 because this action relates to a policy of insurance with limits of liability in excess of $75,000 and an underlying claim (outlined below) in which greater than $75,000 in damages are being claimed. Jurisdiction is also proper pursuant to the provisions of 28 U.S.C. §1332(a)(1). There is diversity of citizenship between the parties. The provisions of the Federal Declaratory Judgment Act permit this Court to declare the rights and obligations of the parties under the policy of insurance at issue.

5. Venue is appropriate in this Court pursuant to the provisions of 28 U.S.C. §1391(a) and (c) because both Defendants reside in and conduct business in this District. Additionally, this action seeks declaratory relief in regards to a liability suit which is currently pending between Gardenmasters and Earthcare in the Circuit Court of the Twelfth Judicial Circuit in and for Collier County, Florida, Case Number 17-CA-00107 (hereinafter referred to as the "underlying litigation").

## BACKGROUND FACTS

6. Western World issued a general liability policy which includes limited professional liability coverage, to Gardenmasters. The policy was in effect from September 1, 2015 to September 1, 2016. A copy of said policy is attached hereto as Exhibit 1. Said policy will hereinafter be referred to as "the policy."

7. Earthcare has brought a suit against Gardenmasters in the form of a counterclaim as referenced in paragraph 5 above. As a result of this underlying litigation, Gardenmasters has presented a claim for coverage under the Western World policy. The currently pending counterclaim in the underlying litigation is attached hereto as Exhibit 2.

8. In the underlying litigation, Earthcare seeks damages against Gardenmasters for damages suffered by Earthcare as the result of multiple plantings dying on the properties of customers of Earthcare. Basically, Earthcare had contracts to provide lawn and ornamental pest control and fertilization services to multiple customers at several properties. Earthcare retained Gardenmasters to provide pest control and fertilization services at the properties. This included the application of herbicides, fungicides, and/or pesticides so as to prevent death and destruction of the plantings. In June of 2016, however, multiple plantings serviced by Earthcare began to die. The underlying Complaint alleges that the plants died because Gardenmasters improperly "applied the wrong herbicide, fungicide, and/or pesticide treatments to plantings." As a result of the death of the plantings, Earthcare replaced the damaged plantings at its own cost. Additionally, Earthcare asserts that it suffered additional damages. Earthcare sues Gardenmasters under theories of negligence, common law indemnification, and breach of contract. The lost plantings resulted in Earthcare suffering damages well in excess of this Court's jurisdictional requirement of $75,000. In addition to the Earthcare claims, claims have also been presented by other customers of Gardenmasters, arising from the same set of circumstances where plants died after being sprayed/treated.

9. Though not clearly referenced in the underlying litigation, the plants actually died due to the actions of a disgruntled employee of Gardenmasters named Wilber Carlos Alvarez. Alvarez had been demoted and reprimanded by the principals of Gardenmasters. In apparent

retribution for this action, Alvarez sprayed the plantings with a toxic mixture of products which included a weed killer known as Manor or some other similar product. Thus, the plants died because of the intentional wrongdoing of Mr. Alvarez in spraying the plants with weed killer or a similarly destructive product. This was an improper use of said product. Thus, the weed killer/product was not mixed, blended, or used in accordance with the manufacturer's instructions or directions. Additionally, spraying of the product on the plants was violative of various statutes and regulations relating to the use of said product.

## CLAIM FOR DECLARATORY JUDGMENT

10. This is an action for declaratory judgment against both Gardenmasters and Earthcare. Pursuant to the provisions of 28 U.S.C. §2201.

11. Paragraphs 1 through 9 above are incorporated herein by reference.

12. Western World seeks a ruling that there is no indemnity coverage owed under the policy for the claims brought by Earthcare against Gardenmasters in the underlying litigation., and any other claims involving said incident. Thus, Western World is specifically seeking a ruling that there is no obligation to pay any judgment or settlement rendered in conjunction with the underlying litigation, or in regard to any other claim arising from the incident in question.

13. The underlying litigation and other claims are not covered under the policy due to the policy's pest control services limitation endorsement. This endorsement specifically provides that:

> This insurance does not apply to any claim arising out of . . . any product not mixed, blended, or used in accordance with the manufacturer's instructions or directions.

Spraying of the plantings with Manor and/or a similar product did not involve a proper, mixing, blending, or use of the product in accordance with the manufacturer's instructions or

directions. Thus, there is no indemnity coverage owed under the policy due to the pest control services limitation endorsement.

14. There is also no coverage under the policy due to the policy's intentional acts exclusions. Both the main policy form and the professional liability coverage form contain an intentional acts exclusion providing that there is no coverage for any property damage expected or intended from the standpoint of the insured. Because Mr. Alvarez intended to kill the plants, there is no coverage for Gardenmasters' alleged vicarious liability for the wrongdoing of Alvarez.

15. There is also no coverage under either the main policy part or the professional liability coverage part because both parts contain a pollution exclusion providing that there is no coverage for property damage arising out of the actual "discharge, dispersal, seepage, migration, release, or escape of pollutants." Pollutants are defined as any "solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." The product sprayed on the plants constitutes a pollutant, and, therefore, the resulting damage falls within the policy's pollution exclusions. Further, the policy's "pesticide or herbicide applicator coverage" endorsement does not restore coverage and make the pollution exclusion inapplicable under these facts. This endorsement to the policy provides that the pollution exclusion is inapplicable "if the operations meet all standards of any statute, ordinance, regulation, or license requirement of any federal, state or local government which apply to those operations." The use of the product in the manner utilized by Mr. Alvarez was violative of statutes, ordinances, and regulations which relate to the proper use of said product. Additionally, it was violative of licensing requirements. Thus, the pesticide or herbicide applicator coverage exception to the pollution exclusion is inapplicable and the pollution exclusion also bars coverage.

16. The policy also contains standard damage to your property exclusions which specifically provide that there is no coverage for:

"Property damage" to:

. . .

(4) Personal property in the care, custody, or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf or performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it.

In this case, the plants were damaged while Gardenmasters was performing operations, caring for, and/or working on said plants. Because the plants were damaged while Gardenmasters was working on and with them, exclusions J(4), J(5), and J(6) also preclude coverage.

17. The policy also includes a property damage coverage extension which provides that for the operations of pest control and lawn care, that exclusions J(4) and J(5) do not apply to property damage resulting from the insured's operations. This section of the policy, however, goes on to provide that for such operations, the limits of liability are $5,000 each occurrence / $25,000 aggregate. As indicated in number 16 above, exclusion J(6) results in there being no coverage for the claim, and, therefore, this property damage coverage extension does not restore any coverage. To the extent, however, the Court finds that exclusion J(6) is inapplicable, the property damage coverage extension would limit the available coverage to $5,000 each occurrence / $25,000 aggregate, because the claim falls within the parameters of exclusions J(4)

and/or J(5). Thus, if the Court finds coverage to otherwise exist under the policy, the limits of liability should be limited to $5,00 each occurrence / $25,000 aggregate due to the property damage coverage extension endorsement. Further, it is the position of Western World that the alleged wrongdoing qualifies as only a single occurrence, and, therefore, the limits of liability are limited to $5,000, rather than the $25,000 aggregate.

18. There is also an additional reason that the professional liability part of the policy affords no coverage. As indicated above, said part of the policy affords no coverage due to the pest control services limitation endorsement, the fact that the intentional act exclusion applies, and due to the pollution exclusion contained within said policy form. Additionally, the professional liability part of the policy specifically limits coverage to wrongdoings which qualify as a "professional incident." The alleged wrongdoing does not qualify as a "professional incident" as defined in the professional liability coverage form. Specifically, the form limits coverage to professional services "but only of the type described in the schedule of this coverage part." No professional services are described in the professional liability coverage form so this section of the definition of "professional incident" affords no coverage. Professional incident is also defined to include negligent acts or omissions of the insured in the furnishing of health care services. No health care services were being provided in conjunction with the claim brought in the underlying litigation. Thus, the professional liability coverage form is simply inapplicable because the claim does not arise from a covered "professional incident" as defined in the professional liability coverage form.

19. After the plants began to die, Gardenmasters placed Western World on notice of the event. Western World then began investigating why the plants had died. During this investigation, representatives of Gardenmasters basically told Western World's investigators that

7

the plants had been sprayed with the product Meridian, which is a product intended to be sprayed on plants. The representatives of Gardenmasters indicated they had no explanation for why the plants had died. In actuality, the representatives of Gardenmasters knew that Mr. Alvarez had intentionally sprayed the plants with the weed killer Manor or some similarly toxic substance. The insureds did not disclose this information to Western World. Thus, the insured's representatives deceived Western World as to how the events had occurred. This constitutes a violation of the policy's provision requiring the insured to cooperate with the insurer's investigation of the claim. Thus, Western World seeks a ruling that no coverage exists under the policy due to the insured's wrongful and deceitful actions related to reporting of the loss to Western World.

20. There is an ongoing dispute between Western World and Gardenmasters regarding the issue of whether the Western World policy affords any coverage for the claims brought in the underlying litigation and the other claims against Gardenmasters. Because there is an ongoing dispute between the parties, this matter is subject to a declaratory decree by the Court. Western World specifically requests that this Court enter a declaratory judgment finding that Western World has no obligation to afford any indemnity coverage for the claims brought in the underlying litigation and the other claims. There is a real and existing dispute between the parties, and Western World needs declaratory relief to determine the parties' rights and obligations under the policy of insurance as to the claims for indemnity under the policy.

21. Earthcare is included as a party in this declaratory judgment action because of the requirements of Florida and Federal law that an underlying plaintiff be included in any coverage dispute between an insurer and its insured for said coverage decision to be binding and res judicata upon said plaintiff.

22. Western World therefore requests that this Court entertain this Amended Complaint for Declaratory Judgment and enter a declaratory decree holding that in regards to the underlying litigation and related claims no indemnity coverage is owed and, therefore, Western World cannot be required to pay any judgment or settlement relating thereto. It is also requested that Western World be awarded its costs and any other relief this Court deems necessary.

Dated this 23rd day of May, 2017.

_____
CHRIS BALLENTINE
Florida Bar No. 434205
Fisher Rushmer, P.A.
390 N. Orange Avenue, Ste. 2200
Post Office Box 3753
Orlando, FL 32801-1642
Telephone: (407) 843-2111
Facsimile: (407) 422-1080
cballentine@fisherlawfirm.com (primary)
dburns@fisherlawfirm.com (secondary)

ATTORNEYS FOR PLAINTIFF

L:\CMB\Garden Masters\DEC PLEADINGS\Amended Complaint.docx\CMB/djb